B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS<br>　WESLEY H. AVERY, Chapter 7 Trustee | DEFENDANTS<br>　VIOLET E. OBAMOGIE; FELIX OBAMOGIE and<br>　DOES 1-20, inclusive |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Scheer Law Group, LLP<br>155 N. Redwood Dr., Suite 100<br>San Rafael, CA 94903    Telephone (415) 491-8900 | ATTORNEYS (If Known) |

| PARTY (Check One Box Only)<br>☐ Debtor　　　☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor　　☐ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>☒ Debtor　　　☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor　　☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

PLAINTIFF IS HEREBY FILING A COMPLAINT FOR: (1) AVOIDANCE OF FRAUDULENT TRANSFER; (2) RECOVERY OF AVOIDED TRANSFER; (3) IMPOSITION OF A CONSTRUCTIVE TRUST; (4) A DECLARATORY JUDGMENT QUIETING TITLE TO REAL PROPERTY; (5) TURNOVER; (6) INJUNCTIVE RELIEF; (7) PERMISSION TO SELL REAL PROPERTY IN WHICH A NON-DEBTOR ASSERTS AN INTEREST; (8) FRAUD; (9) SUBSTANTIVE CONSOLIDATION OF DEFENDANTS WITH THE DEBTOR'S ESTATE

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☒ 11-Recovery of money/property – §542 turnover of property
☐ 12-Recovery of money/property – §547 preference
☒ 13-Recovery of money/property – §548 fraudulent transfer
☒ 14-Recovery of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☒ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge – §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability – §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability – §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability – §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability – §523(a)(5), domestic support
☐ 68-Dischargeability – §523(a)(6), willful and malicious injury
☐ 63-Dischargeability – §523(a)(8), student loan
☐ 64-Dischargeability – §523(a)(15), divorce or separation obligation
　　(other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☒ 02-Other (e.g. other actions that would have been brought in state court
　　if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought  11 U.S.C. Section 105(a), 544(b), 550; 28 U.S.C. Section 2201(a); and Cal Civ. Code Section 3439.04(a)(1)

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR FELIX IMOISILI OBAMOGIE | BANKRUPTCY CASE NO. 2:22-bk-16217-NB | |
| DISTRICT IN WHICH CASE IS PENDING CENTRAL DISTRICT OF CALIFORNIA | DIVISION OFFICE LOS ANGELES | NAME OF JUDGE HON. NEIL W. BASON |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) /s/REILLY D. WILKINSON | | |
| DATE 6/27/2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF) REILLY D. WILKINSON | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

1  SCHEER LAW GROUP, LLP
   SPENCER P. SCHEER #107750
2  JOSHUA L. SCHEER #242722
   REILLY D. WILKINSON #250086
3  TIMOTHY SILVERMAN #145264
   85 Argonaut, Suite 202
4  Aliso Viejo, CA 92656
   Office: (949) 263-8757
5  Fax: (949) 308-7373
   AW.300-003S-TS
6
   Attorney for Plaintiff Attorney for Wesley H. Avery, Chapter 7 Trustee
7

8              UNITED STATES BANKRUPTCY COURT FOR

9        THE CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

10  | In re:                          | Bk. No.: 2:22-bk-16217-NB |
    |                                 | A.P. No.: |
11  | FELIX IMOISILI OBAMOGIE         | **Chapter 7** |
    | fdba PERMIT SOLUTIONS GURU      | |
12  | fdba ABU HOLDINGS               | |
    |              Debtor.            | **TRUSTEE'S COMPLAINT FOR: (1)** |
13  |                                 | **AVOIDANCE OF FRAUDULENT** |
    | _____/ | **TRANSFER; (2) RECOVERY OF** |
14  |                                 | **AVOIDED TRANSFER; (3) IMPOSITION** |
    |   WESLEY H. AVERY, Chapter 7 Trustee, | **OF A CONSTRUCTIVE TRUST; (4) A** |
15  |                                 | **DECLARATORY JUDGMENT** |
    |            Plaintiff,            | **QUIETING TITLE TO REAL** |
16  |                                 | **PROPERTY; (5) TURNOVER; (6)** |
    |              vs.                | **INJUNCTIVE RELIEF; (7) PERMISSION** |
17  |                                 | **TO SELL REAL PROPERTY IN WHICH** |
    | VIOLET E. OBAMOGIE; FELIX OBAMOGIE | **A NON-DEBTOR ASSERTS AN** |
18  | and  DOES 1-20, inclusive;      | **INTEREST; (8) FRAUD; (9)** |
    |            Defendants.          | **SUBSTANTIVE CONSOLIDATION OF** |
19  |                                 | **DEFENDANTS WITH THE DEBTOR'S** |
20  |                                 | **ESTATE [11 U.S.C. §§ 105(a), 363(h), 542,** |
    |                                 | **544(b), 548 and 550, 28 U.S.C. § 2201(a)** |
21  |                                 | **and Cal. Civ. Code § 3439.04(a)(1)]** |
22  |                                 | |
    |                                 | Date:[To be set] |
23  |                                 | Time:[To be set] |
24  |                                 | Place: U.S. Bankruptcy Court |
25  |                                 |        Courtroom 1545 |
    |                                 |        255 E. Temple Street |
26  |                                 |        Los Angeles, CA 90012 |
27
28

                          COMPLAINT- 1

1    **TO THE HONORABLE NEIL W. BASON, BANKRUPTCY JUDGE, AND TO THE**

2    **DEFENDANTS:**

3        Plaintiff, Wesley H. Avery, the duly appointed and acting chapter 7 trustee (the

4    "**Trustee**" or "**Plaintiff**"), for the bankruptcy estate (the "**Estate**") of Felix Imosisili Obamogie

5    fdba Permit Solutions Guru fdba ABU Holdings, an individual (the "**Debtor**"), hereby complains

6    of the above-captioned defendants, and each of them (collectively, the "**Defendants**") as follows.

7    <u>**PARTIES**</u>

8        1.    Plaintiff is the duly appointed and acting chapter trustee of the Debtor in Case No.

9    2:22-bk-16217-NB (the "**Bankruptcy Case**").  The Debtor commenced the Bankruptcy Case by

10    filing a chapter 7 voluntary petition (the "**Petition**"), Schedules (the "**Schedules**") and Statement

11    of Affairs (the "**Statement of Affairs**") on November 14, 2022 (the "Petition Date").  Plaintiff

12    was subsequently appointed as the Trustee.

13        2.    Defendant Violet E. Obamogie, an individual ("**Violet**"), is the wife of the

14    Debtor.

15        3.    Defendant Felix Obamogie, an individual ("**Debtor**") is the Chapter 7 Debtor.

16    <u>**PROPERTY SUBJECT TO THIS ADVERSARY PROCEEDING**</u>

17        4.    The following real property is located in the Central District of California: single

18    family residence commonly known as 142 Wistaria Ave, Arcadia, CA 91006, APN 5789-012-

19    006 ("**Property**").  The legal description of the Property is as follows:

20        Lot 6 Tract 16872, in the City of Arcadia, as per Map recorded in Book 404,
    Pages 38 and 39 of Maps, in the Office of the County Recorder of said County.

21

22    **JURISDICTION**

23        5.    This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§

24    157(b)(1) and (2) and 1334(a), as this is a core proceeding under 28 U.S.C. § 157(a) and §

25    157(b)(2)(A), (E), (H), (N) and (O). Venue properly lies in this judicial district pursuant to 28

26    U.S.C. § 1409(a), in that the instant adversary proceeding is related to the Bankruptcy Case

27    which is a case under Title 11 of the U.S. Code.

28

## GENERAL ALLEGATIONS

### Calvary Portfolio Services, LLC and Other Debts Due and Owing at Time of Transfers

6.     On or about May 30, 2009, Debtor was indebted to MBNA/FIA Card Services, N.A. ("**MBNA**") in the sum of $29,803.86 on an account stated for credit card purchases and/or advances ("**Credit Card Debt**").  On June 19, 2009, the Credit Card Debt was assigned to Cavalry Portfolio Services, LLC ("**Cavalry**").  After the Debtor defaulted on the Credit Card Debt, Cavalry initiated a lawsuit against the Debtor, (CAVALRY PORTFOLIO SERVICES LLC VS FELIX I. OBAMOGIE et al, Case No. GC047642, Superior Court of California, Los Angeles County) ("**Cavalry Lawsuit**").  Debtor and Cavalry entered into a conditional settlement agreement, which the Debtor breached.  Judgment ("**Cavalry Judgment**") was entered in the Cavalry Lawsuit against the Debtor on May 14, 2015 in the amount of $45,423.67.

7.     Besides the Cavalry Judgment, according to Schedule F, the Debtor also owed non-priority unsecured debts as of the Petition Date to the following creditors:

- Credit Card Debt owed to Bank of America incurred in 2020 with a balance due and owing of $10,980 as of the Petition Date.
- Credit Card Debt owed to Capital One Bank incurred in 2019 with a balance due and owing of $4,160 as of the Petition Date.
- Credit Card Debt owed to CBNA incurred in 2021 with a balance due and owing of $10,970 as of the Petition Date.
- Credit Card Debt owed to Credit Union of S.C. incurred in 2021 with a balance due and owing of $8,530 as of the Petition Date.
- Credit Card Debt owed to Discover Bank incurred in 2021 with a balance due and owing of $5,150 as of the Petition Date.
- Credit Card Debt owed to Home Depot incurred in 2020 with a balance due and owing of $4,950 as of the Petition Date.
- Credit Card Debt owed to Sofi Bank incurred in 2020 with a balance due and owing of $14,900 as of the Petition Date.

1    • Judgment in favor of Pasadena Federal Credit Union in the amount of

2        $10,400 as of the Petition Date for debt incurred in 2008.

3        In addition to the above referenced debts, the Debtor had other creditors due to his

4    personal and business obligations.

5        **The Property**

6        8.    The Defendants purchased the Property for $850,000 from Charlotte Y. Medley

7    Family Trust dated August 24, 1993 via grant deed recorded on or about June 8, 2018 in Los

8    Angeles County as document # 20180570310 ("**Medley Grant Deed**").  A true and correct copy

9    of the Medley Grant Deed is attached hereto as Exhibit "1."

10       9.    Defendant's encumbered the Property with a first deed of trust in the amount of

11   $679,000 in which the beneficiary was U.S. Bank National Association ("**U.S. Bank Loan**"),

12   which is evidenced by a deed of trust recorded on or about June 8, 2018 on Los Angeles County

13   as document # 20180570311 ("**U.S. Bank DOT**").  A true and correct copy of the U.S. Bank

14   DOT is attached hereto as Exhibit "2."

15       10.    After encumbering the Property with the U.S. Bank DOT, the Debtor transferred

16   his interest in the Property to Violet for no consideration via a Quitclaim Deed recorded on or

17   about June 8, 2018 in Los Angeles County as document # 20180571917 ("**Violet Quitclaim**

18   **Deed**").  A true and correct copy of the Violet Quitclaim Deed is attached hereto as Exhibit "3."

19   The Violet Quitclaim Deed provides that Debtor releases and forever quitclaims to Violate

20   Obamogie  a married woman and her sole and separate property.

21       11.    As of the Petition Date, the U.S. Bank Loan remains unsatisfied and the U.S.

22   Bank Loan remained as a lien of record against the Property.  According to Schedule D, the U.S.

23   Bank Loan has a balance of $630,000 as of the Petition Date.

24       12.    As part of the Debtor's scheme to defraud Cavalry and other creditors, the Debtor

25   transferred the Property to Violet for no consideration.  The Debtor remained in possession of the

26   Property and Violet did not provide Debtor with reasonably equivalent value and, therefore,

27   received the transfer with knowledge of the voidability of such transfer.

28

**Financial Position of Debtor as of the Date of Transfer**

13.    The instant complaint (the "**Complaint**") initiates an adversary proceeding in which Plaintiff is inter alia seeking to avoid the Violet Quitclaim Deed and recover the Estate's interest in the Property and sell same for the benefit of the Estate.

14.    Unsecured, non-priority debt in the Bankruptcy Case is scheduled by the Debtor as $115,540.00 as of the Petition Date.

15.    The Debtor was insolvent when the Section 544 and 548 transfer was made or became insolvent as a result of the transfer.  The Debtor and the Defendants conspired to make the Transfers in order to defraud the Creditors of the Debtor (the "**Conspiracy**").

16.    The transfer of the Property is voidable under Cal. Civ. Code § 3439.04(a)(1) and 11 U.S.C. § ("Section") 544(b) by U.S. Bank, Cavalry and the remaining unsecured creditors (collectively, the "Creditors") who were creditors holding unsecured claims that are allowable under Section 502 at the time of the Transfers.

17.    The Property constituted all or substantially all of the Debtor's non-exempt assets.

18.    The Property had valuable equity for the benefit of the Debtor's creditors as of the date of the transfer.

19.    At all times herein mentioned there has existed a unity of interest and ownership between the Debtor and the Defendants such that any separateness has ceased to exist, in that the Debtor and the Defendants have each possessed and used the Property for their profit as of the Petition Date.

20.    Plaintiff is ignorant of the true names and capacities of defendants named herein as DOES 1-20, and therefore sues these defendants by such fictitious names.  Plaintiff will amend this Complaint to state their true names and capacities when ascertained, together with appropriate charging allegations.  Plaintiff is informed and believes, and therefore alleges, that each of these fictitiously-named defendants is responsible in some manner for the occurrences herein alleged, and that the damages as herein alleged were proximately caused by such defendants.

## I.

### FIRST CAUSE OF ACTION

**[Avoidance of Violet Quitclaim Deed Transfer Under 11 U.S.C. § 544(b) and Cal. Civ. Code § 3439.04(a)(1)]**

21.    Plaintiff refers to and incorporates herein each and every allegation contained in paragraphs 1 through 20, inclusive, of this Complaint as though fully set forth at length herein.

22.    Within seven years prior to the Petition Date, the Debtor made the Violet Quitclaim Deed Transfer with the actual intent to hinder, delay or defraud any creditor of the Debtor including the Creditors.

23.    The Defendants did not take possession of the Property in good faith, and took possession of the Property with knowledge of the voidability of the Section 544(b) Transfers. Therefore, the Violet Quitclaim Deed Transfer of the Property is avoidable under Section 544(b) and Cal. Civ. Code § 3434.04(a)(1).

## II.

### SECOND CAUSE OF ACTION

**[Recovery of Avoided Transfer or Value Thereof Under 11 U.S.C. § 550(a)]**

24.    Plaintiff refers to and incorporates herein each and every allegation contained in paragraphs 1 through 24, inclusive, of this Complaint as though fully set forth at length herein.

25.    Plaintiff is entitled to not only avoid the Violet Quitclaim Deed Transfer, but also to recover the Property or its value thereof under Section 550(a)(1) for the benefit of the Estate.

26.    The Defendants did not take the Property for value, did not take the Property in good faith, and took the Property with knowledge of the voidability of the Transfer.  Plaintiff is therefore entitled to avoid the Violet Quitclaim Deed Transfer and to recover the Property or its value thereof under Section 550(a)(2) for the benefit of the Estate.

27.    Accordingly, Plaintiff is entitled to set aside and recover from Defendants the Property or its value under Section 550(a).

### III.

### THIRD CAUSE OF ACTION

**[Imposition of Constructive Trust – Section 105(a) and Cal. Civ. Code §§ 2223 and 2224]**

28.    Plaintiff refers to and incorporates herein each and every allegation contained in paragraphs 1 through 27, inclusive, of this Complaint as though fully set forth at length herein.

29.    Plaintiff is informed and believes, and therefore alleges, that Defendants wrongfully obtained possession of the Property the Debtor by fraud, accident, mistake, undue influence, violation of a trust, or some other wrongful act, and therefore, this Court should impose a constructive trust against the Property pursuant to Cal. Civ. Code §§ 2223 and 2224, and applicable federal law, and turnover the Property to the Trustee.

### IV.

### FOURTH CAUSE OF ACTION

**[For a Declaratory Judgment that Quiets Title to the PROPERTIES - 28 U.S.C. § 2201]**

30.    Plaintiff refers to and incorporates herein each and every allegation contained in paragraphs 1 through 29, inclusive, of this Complaint as though fully set forth at length herein.

31.    Plaintiff is now and at all times mentioned herein entitled to sole possession and ownership of the Property.

32.    A dispute has arisen and an actual controversy now exists between the Plaintiff and the Defendants (collectively, the "Parties") concerning their respective rights and duties concerning the Property.  Plaintiff therefore requests a judicial declaration of the rights and obligations of the Parties with regard to their respective interests in the Property, and that the Property is property of the Estate.

### V.

### FIFTH CAUSE OF ACTION

**[Turnover - 11 U.S.C. § 542 and Cal. Civ. Code § 1950.5(h)]**

33.    Plaintiff refers to and incorporates herein each and every allegation contained in paragraphs 1 through 32, inclusive, of this Complaint as though fully set forth at length herein.

34.     The Property is property of the Estate that the Trustee may use, sell or lease under Section 363, and relate to the Debtor's financial affairs.

35.     Plaintiff is entitled to turnover of the Property pursuant to Section 542(a) and (e). .

**VI.**

**SIXTH CAUSE OF ACTION**

**[Injunction - 11 U.S.C. § 105(a)]**

36.     Plaintiff refers to and incorporates herein each and every allegation contained in paragraphs 1 through 35, inclusive, of this Complaint as though fully set forth at length herein.

37.     "The basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 US 305, 312, 102 S.Ct. 1798, 1803 (1982). *See also Stanley v. Univ. of So. Cal.*, 13 F3d 1313, 1320 (9th Circ. 1994).

38.     Plaintiff will be irreparably harmed if the Defendants are not enjoined from: (i) recording liens against the Property, (ii) committing acts of waste involving the Property; or (iii) interfering with the Trustee's sale of the Property.  Plaintiff has no adequate legal remedy to prevent the Defendants aforementioned harmful conduct.

39.     Plaintiff is therefore entitled to injunctive relief which enjoins the Defendants from: (i) recording liens against the Property, (ii) committing acts of waste involving the Property; or (iii) interfering with the Trustee's sale of the Property.

**VII.**

**SEVENTH CAUSE OF ACTION**

**[SALE OF PROPERTY IN WHICH A NON-DEBTOR ASSERTS AN INTEREST - 11 U.S.C. § 363(h)]**

40.     Plaintiff refers to and incorporates herein each and every allegation contained in paragraphs 1 through 39, inclusive, of this Complaint as though fully set forth at length herein.

41.     Pursuant to Section 363(h), the Trustee seeks to sell the Property free and clear of any interests of the Defendants and recover the value of the Estate's interest in the Property.

42.     The Trustee alleges that the partition of the Property is impracticable.

43.      The Trustee alleges that the sale of the undivided interest in the Property would result in significantly less than a sale of the Property free of any interest of the Defendants.

44.      The Trustee alleges that the benefit to the Estate of the sale of the Property outweigh the detriment to the Defendants.

45.      The Trustee alleges that the Property are not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

46.      By reason of the foregoing, the Plaintiff is entitled to sell the Property free and clear of any interest of the Defendants pursuant to Section 363(h).

## XIII.

## EIGHTH CAUSE OF ACTION

**[For Fraud ]**

47.      Plaintiff refers to and incorporates herein each and every allegation contained in paragraphs 1 through 46, inclusive, of this Complaint as though fully set forth at length herein.

48.      Pursuant to 11 U.S.C. § 522(g), the Debtor may not exempt the Property if he voluntarily transferred it.

49.      As part of the Debtor's scheme to defraud Cavalry and other creditors, the Debtor transferred the Property to Violet for no consideration in an effort to avoid creditors.  The Debtor remained in possession of the Property and Violet did not provide Debtor with reasonably equivalent value and, therefore, received the transfer with knowledge of the voidability of such transfer.

50.      Accordingly, Debtor is not entitled to the claimed exemption pursuant to 11 U.S.C. § 522(g).

## IX.

## NINTH CAUSE OF ACTION

**[Substantive Consolidation of the Defendants with the Estate]**

51.      Plaintiff refers to and incorporates herein each and every allegation contained in paragraphs 1 through 50, inclusive, of this Complaint as though fully set forth at length herein.

1    52.    The bankruptcy court's power of substantive consolidation has been considered

2 part of the bankruptcy court's general equitable powers since the passage of the Bankruptcy Act

3 of 1898, and at present, its power derives from the Court's general equity powers as expressed in

4 Section 105(a).  *In re Bonham*, 229 F.3d 750, 763-64 (9th Cir. 2000); *S.I. Acquisition, Inc. v.*

5 *Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.),* 817 F.2d 1142, 1145 n. 2 (5th Cir.

6 1987.)  *See also In re Owner Management* , 530 B.R. 711 (Bankr. C.D. Cal. 2015) (family

7 members of the debtor may be substantively consolidated into the debtor's estate).  Further, The

8 Ninth Circuit has adopted the test for substantive consolidation which was established by the

9 Second Circuit and which requires the consideration of the following two factors: "(1) whether

10 creditors dealt with the entities as a single economic unit and did not rely on their separate

11 identity in extending credit; or (2) whether the affairs of the debtor are so entangled that

12 consolidation will benefit all creditors." 229 F.3d. at 766 (citing *Augie/Restivo*, 860 F.2d at 518).

13 The affairs of the Debtor and the Defendants are so entangled that consolidation will benefit all

14 creditors. Further, the Creditors have treated the Defendants and the Debtor as one and the same.

15 Thus, pursuant to this Court's powers to substantively consolidate, through the filing of this

16 Complaint, the Trustee seeks the substantive consolidation of the assets and liabilities of the

17 Defendants with those of the Debtor.

18 **WHEREFORE**, the Plaintiff respectfully prays for judgment against the Defendants as follows:

19    A.    On the first cause of action, that the Violet Quitclaim Deed Transfer be avoided

20 for the benefit of the Estate;

21    B.    On the second cause of action, that the Property be recovered by the Estate;

22    C.    On the third cause of action, for the imposition of a constructive trust against the

23 Property, and for the turnover of the Property to the Trustee;

24    D.    On the fourth cause of action, for a judicial declaration of the rights and

25 obligations of the Parties with regard to their respective interests in the Property;

26    E.    On the fifth cause of action, for turnover of the Property;

27

28

1      F.      On the sixth cause of action, for injunctive relief which enjoins the Defendants

2    from: (i) recording liens against the Property, (ii) committing acts of waste involving the

3    Property; or (iii) interfering with the Trustee's sale of the Property;

4      G.      On the seventh cause of action, for permission to sell the Property and the

5    Defendants' undivided interest in same, if any;

6      H.      On the eighth cause of action, for substantive consolidation of the Defendants'

7    assets and liabilities with those of the Estate;

8      I.      For attorney fees and costs incurred by the Plaintiff; and

9      J.      Such other and further relief as this Court deems just and proper.

10

11                        SCHEER LAW GROUP, LLP

12    Dated: June 27, 2023           /s/REILLY D. WILKINSON

13                        #250086

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit "1"



**This page is part of your document - DO NOT DISCARD**

# 20180570310





**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/08/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 45.00 |
| TAXES: | 935.00 |
| OTHER: | 0.00 |
| PAID: | 980.00 |

## PCOR SURCHARGE $20.00



**L E A D S H E E T**



201806080110010

**00015344727**



009139111

## SEQ:
## 10

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E442318

R27

2

STEWART TITLE OF CALIFORNIA, INC.

RECORDING REQUESTED BY:
Green Apple Escrow, Inc.
Order No. CA0310-18007276-30
Escrow No. 3203-SS
Parcel No. 5789-012-006

AND WHEN RECORDED MAIL TO:

FELIX OBAMOGIE
142 E. WISTARIA AVENUE
ARCADIA, CA 91006



06/08/2018

*20180570310*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS $935.00 and CITY S

☒ computed on full value of property conveyed, or
☐ computed on full value less liens or encumbrances remaining at the time of sale.
☐ unincorporated area:         ☒ Arcadia, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Charles Michael Lopez, Successor Trustee of the Charlotte Y. Medley Family Trust dated August 24, 1993

hereby GRANT(S) to **Felix Obamogie and Violet E. Obamogie, husband and wife as Joint Tenants.**
the following described real property in the County of **Los Angeles**, State of California:
LEGAL DESCRIPTION ATTACHED AS EXHIBIT A
More commonly known as: **142 E. Wistaria Avenue, Arcadia, CA  91006**

Date : May 16, 2018

Charles Michael Lopez, Successor Trustee of the
Charlotte Y. Medley Family Trust dated August 24,
1993

*Charles Michael Lopez  TTE*

By: Charles Michael Lopez, Successor Trustee

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document
to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_     } S.S.

On _June 06, 2018_, before me, _M.C. Nieuwenhuis, Notary Public_
personally appeared _Charles Michael Lopez_, who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal.

Signature _M.C. Nieuwenhuis_ (Seal)

M. C. NIEUWENHUIS
Commission # 2108564
Notary Public - California
Los Angeles County
My Comm. Expires Apr 25, 2019

Mail Tax Statement to: SAME AS ABOVE or Address Noted Below

10A

**EXHIBIT A**
Legal Description

The land hereinafter referred to is situated in the City of Arcadia, County of Los Angeles, State of CA, and is described as follows:

Lot 6 Tract 16872, in the City of Arcadia, as per Map recorded in Book 404, Pages 38 and 39 of Maps, in the Office of the County Recorder of said County.

APN: 5789-012-006

Exhibit "2"



## This page is part of your document - DO NOT DISCARD



**20180570311**



**Pages:**
**0019**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/08/18 AT 08:00AM**

| FEES: | 78.00 |
|-------|-------|
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 153.00 |



**L E A D S H E E T**



201806080110010

**00015344728**



009139111

**SEQ:**
**11**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E442318

R27

2-

STEWART TITLE OF CALIFORNIA, INC.

**Recording Requested By:** U.S.
Bank National Association

**Return To:** U.S. Bank Home Mtg
7601 Penn Ave S, Ste A1
Richfield, MN 55423

**Prepared By:** Jorge Romero
17851 N 85TH St. Ste 205
Scottsdale, AZ 85255

**Assessor's Identification
Number:** 5789012006

**Property Address:**
142 E Wistaria Ave
Arcadia, CA 91006


06/03/2018
*20180570311*

---

# Deed of Trust

---

**Definitions.** Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) *"Security Instrument"* means this document, which is dated June 7, 2018, together with all Riders to this document.

(B) *"Borrower"* is Felix Obamogie and Violet E Obamogie, husband and wife. Borrower's address is PO BOX 661094, ARCADIA, CA 91066. Borrower is the trustor under this Security Instrument.

(C) *"Lender"* is U.S. Bank National Association. Lender is a national bank organized and existing under the laws of the United States of America. Lender's address is 4801 Frederica Street, Owensboro, KY 42301. Lender is the beneficiary under this Security Instrument.

(D) *"Trustee"* is Olivia Todd.

(E) *"Note"* means the promissory note signed by Borrower and dated June 7, 2018. The Note states that Borrower owes Lender six hundred seventy nine thousand and 00/100 Dollars (U.S. $679,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than July 1, 2048.

(F) *"Property"* means the property that is described below under the heading "Transfer of Rights in the Property."

---

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
11/2017
Page 1 of 17



**(G)** *"Loan"* means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** *"Riders"* means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☐ Planned Unit Development Rider   ☐ 1-4 Family Rider
☐ VA Rider    ☐ Biweekly Payment Rider    ☒ Other(s) [specify]

**EXHIBIT "A"**

**(I)** *"Applicable Law"* means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** *"Community Association Dues, Fees, and Assessments"* means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** *"Electronic Funds Transfer"* means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** *"Escrow Items"* means those items that are described in Section 3.

**(M)** *"Miscellaneous Proceeds"* means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** *"Mortgage Insurance"* means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** *"Periodic Payment"* means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** *"RESPA"* means the *Real Estate Settlement Procedures Act* (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, RESPA refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** *"Successor in Interest of Borrower"* means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**Transfer of Rights in the Property.** This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
11/2017
Page 2 of 17

Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County [Type of Recording Jurisdiction] of Los Angeles [Name of Recording Jurisdiction] Lot 6 Tract 16872, in the city of Arcadia, as per Map recorded in Book 404, Pages 38 and 39 of Maps, in the Office of the County Recorder of said County.

**Parcel ID Number:** 5789-012-006  which currently has the address of 142 E Wistaria Ave [Street] Arcadia [City], California 91006 [Zip Code] *("Property Address")*:

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the *"Property."*

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**Uniform Covenants.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
11/2017
Page 3 of 17

shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the *"Funds"*) to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called *"Escrow Items"*. At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®                                      1
Wolters Kluwer Financial Services

Form 3005 1/01
11/2017
Page 4 of 17

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
11/2017
Page 5 of 17

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term *"extended coverage,"* and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
11/2017
Page 6 of 17

for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
11/2017
Page 7 of 17

**9. Protection of Lender's Interest in the Property and Rights Under this Security
Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security
Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the
Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate,
for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security
Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then
Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the
Property and rights under this Security Instrument, including protecting and/or assessing the value
of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not
limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b)
appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/
or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.
Securing the Property includes, but is not limited to, entering the Property to make repairs, change
locks, replace or board up doors and windows, drain water from pipes, eliminate building or other
code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take
action under this Section 9, Lender does not have to do so and is not under any duty or obligation to
do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this
Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower
secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of
disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting
payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the
lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge
unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the
Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If,
for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from
the mortgage insurer that previously provided such insurance and Borrower was required to make
separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the
premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in
effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously
in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage
Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the
separately designated payments that were due when the insurance coverage ceased to be in effect.
Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage
Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is
ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on
such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage
(in the amount and for the period that Lender requires) provided by an insurer selected by Lender
again becomes available, is obtained, and Lender requires separately designated payments toward the
premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making
the Loan and Borrower was required to make separately designated payments toward the premiums
for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in
effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
11/2017
Page 8 of 17

ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(A) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(B) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
11/2017
Page 9 of 17

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. *"Opposing Party"* means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
11/2017
Page 10 of 17

amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
11/2017
Page 11 of 17

have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, *"Interest in the Property"* means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
11/2017
Page 12 of 17

Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the *"Loan Servicer"*) that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) *"Hazardous Substances"* are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) *"Environmental Law"* means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) *"Environmental Cleanup"* includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an *"Environmental Condition"* means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
11/2017
Page 13 of 17

Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**Non-Uniform Covenants.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
11/2017
Page 14 of 17

*16*

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any
covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima
facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the
sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable
Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any
excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall
request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes
evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property
without warranty to the person or persons legally entitled to it. Lender may charge such person or
persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such
as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If
the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be
reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee
to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and
recorded in the office of the Recorder of the county in which the Property is located. The instrument
shall contain the name of the original Lender, Trustee and Borrower, the book and page where
this Security Instrument is recorded and the name and address of the successor trustee. Without
conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties
conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee
shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount
permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of
the *Civil Code of California*.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under
this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any
Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded
request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

**Borrower**

_____
Felix Obamogie

_____
Violet E Obamogie

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
11/2017
Page 15 of 17

17

> A notary public or other officer completing this certificate verifies only the
> identity of the individual who signed the document to which this certificate
> is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Los Angeles

On __10/7/18_____, before me, _Silna Marie Saucedo____Notary Public,
personally appeared Felix Obamogie, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Notary Public_

SYLVIA MARIE SAUCEDO
Notary Public – California
Los Angeles County
Commission # 2185568
My Comm. Expires Mar 31, 2021

_Silna Marie Saucedo_
(Print Name)

My commission expires: __MAR- 31, 2021_____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
11/2017
Page 16 of 17



A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Los Angeles

On _____, before me, _Sylvia Marie Saucedo_ Notary Public, personally appeared Violet E Obamogie, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public

SYLVIA MARIE SAUCEDO
Notary Public – California
Los Angeles County
Commission # 2185568
My Comm. Expires Mar 31, 2021

_Sylvia Marie Saucedo_
(Print Name)

My commission expires: MAR. 31, 2021

Loan Origination Organization: U.S. Bank National Association
NMLS ID: 402761

Loan Originator: Catherine Pan
NMLS ID: 778874

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services

Form 3005 1/01
11/2017
Page 17 of 17

19

**EXHIBIT A**
Legal Description

The land hereinafter referred to is situated in the City of Arcadia, County of Los Angeles, State of CA, and is described as follows:

Lot 6 Tract 16872, in the City of Arcadia, as per Map recorded in Book 404, Pages 38 and 39 of Maps, in the Office of the County Recorder of said County.

APN: 5789-012-006

Exhibit "3"

**This page is part of your document - DO NOT DISCARD**





## 20180571917



**Pages:**
**0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**06/08/18 AT 03:23PM**

|  |  |
|---|---|
| FEES: | 33.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 33.00 |



**L E A D S H E E T**



**201806083350048**

**00015346382**



**009139940**

**SEQ:**
**01**

**DAR - Counter (Upfront Scan)**



**THIS FORM IS NOT TO BE DUPLICATED**



*E629179*

RECORDING REQUESTED BY

_____

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME *Violet Obamoge*

STREET ADDRESS *142 E Wistana Ave*

CITY, STATE & ZIP CODE *Arcadia Ca 91006*

_____

SPACE ABOVE FOR RECORDER'S USE ONLY

## *Quick claim Deed*

**Title of Document**

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☑ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☐ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)**

**RECORDING REQUESTED BY:**

FELIX OBAMOGE

**WHEN RECORDED MAIL TO AND MAIL TAX STATEMENTS TO:**

Name: VIOLET OBAMOGIE

Address: 142 E WISTARIA AVE

City: ARCADIA

State, Zip: 91006

---

# QUITCLAIM DEED

Title Order No. _____ Escrow OR LOAN No. _____ APN No. 5789-012-006

THE UNDERSIGNED GRANTOR(s) DECLARE(s)

DOCUMENTARY TRANSFER TAX is $ 00.00 _____ CITY TAX $ 00.00

*Conveyance to establish sole and separate property of a spouse.*

☐ Computed on full value of property conveyed, or
☐ Computed on full value less value of liens or encumbrances remaining at time of sale,

☑ Unincorporated area    ☑ City of ARCADIA , CA. COUNTY OF LOS ANGELES _____ , and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
FELIX OBAMOGIE , GRANTEES SPOUSE

Hereby remise, release and forever quitclaim to
VIOLET OBAMOGIE, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

The following described real property in the County of: LOS ANGELES _____ , State of California:
*See Schedule A attached*

6/8/18
Date

*Felix Obamogie*
FELIX OBAMOGIE
Signature

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not to the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
County of *Los Angeles* } ss

On *June 8, 2018* before me, *Jessica M. Garcia, Notary Public*
Date                                    Name and Title of officer

personally appeared *Felix Obamogie* who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

*Jessica M. Garcia*
Notary Signature

JESSICA M. GARCIA
Notary Public - California
Los Angeles County
Commission # 2199056
My Comm. Expires May 26, 2021

QD (03/13/2015)                    MAIL TAX STATEMENTS TO ADDRESS AS SHOWN ABOVE

## SCHEDULE A

The estate or interest in the land hereinafter described or referred to covered by this Report is:

A Fee

Title to said estate or interest at the date hereof is vested in:

Charlotte Y. Medley, as Trustee of the Charlotte Y. Medley Family Trust dated August 24, 1993

The land hereinafter referred to is situated in the City of Arcadia, County of Los Angeles, State of CA, and is described as follows:

Lot 6 Tract 16872, in the City of Arcadia, as per Map recorded in Book 404, Pages 38 and 39 of Maps, in the Office of the County Recorder of said County.

APN: 5789-012-006